Carl Wescott
PO Box 190875
San Francisco, CA 94966
*in propria persona*
+1 415 335 5000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | | |
|---|---|---|
| Carl Alexander Wescott, | ) | Case Number 17-CV-05676-LB |
| Plaintiff | ) | |
| | ) | **PLAINTIFF'S MOTION TO DISQUALIFY** |
| -------------------- versus -------------------- | ) | |
| | ) | |
| SC Anderson, Inc.; | ) | Thursday, March 22nd, 2017 |
| Herrig & Vogt, LLP; | ) | 450 Golden Gate Avenue |
| Moe's Process Serving, Inc.; | ) | 9:30 am (Law and Motion calendar) |
| Defendants | ) | |

Plaintiff Carl Wescott, proceeding pro per, hereby moves this Court to disqualify the law firm of Herrig & Vogt, LLP ("H&V") because of potential prejudice to Plaintiff arising out of the unavoidable need for extensive testimony from firm Principal George Vogt, Esq. as well as likely testimony from other members of the firm. In support of his Motion, the Plaintiff offers the following Memorandum of Points & Authorities.

1

1. <u>Testimony Will be Taken From H&V Attorneys on Critical Fact Issues</u>

This case involves allegations of a well-planned and well-executed conspiracy to obtain extra-contractual damages through a pattern of racketeering, fraud and abuse of process. The Defendants had a breach of contract action against an S Corporation (Surprise Development, Inc.) that no longer has any assets, for professional services they contributed to a failed development. This was an unfortunate but not uncommon legacy of the implosion of the real estate market (and lingering effects thereof) almost ten years ago.

The Defendants could have protected themselves against this eventuality by having extracted a personal guarantee from the Plaintiff, who managed and owned the S Corporation in question (Surprise Development). In their haste to obtain business (another not uncommon feature of the overheated market that preceded the implosion) the Defendants failed to obtain such a guarantee, fearing (reasonably) that the Plaintiff would have gone elsewhere for professional services.

Instead of accepting the loss for which they had consciously assumed the risk, the Defendants schemed to effectively collect on a guarantee they had never bargained for. If they sued the Plaintiff personally, he might well successfully defend by pointing to the terms of the parties' contract that confined liability to the penurious LLC. Accordingly the plan, almost certainly hatched by the Principals of Herrig & Vogt ("H&V") was to file a "stealth" lawsuit and cram through a fraudulent default. With the assistance of a perjurious process server, H&V would file suit; essentially fake service; use the fake service to obtain a default judgment against the (instant) Plaintiff and resurface when the default was virtually unchallengeable.

Along the way, H&V was informed of a pending bankruptcy filed by the Plaintiff and the issuance of an automatic stay. They ignored the injunction and proceeded in state court,

gambling that the Plaintiff (a previously successful real estate entrepreneur) was likely to amass garnishable assets before the corpse of the S Corporation was likely to do so. In the meantime, the perjurious process server (AKA "Moe's") helped himself to the contents of the Plaintiff's PO Box (as he himself certified under penalty of perjury in court documents), gratuitously browsing the contents in derogation of federal statute, the Plaintiff's right of privacy, and all standards of human decency.

This scheme, and a related scheme to harass the Plaintiff in other ways, played out over a period of years. At the very center of the web is the arachnid-esque Mr. Vogt.

Clearly, the testimony of Mr. Vogt (and very likely the testimony of subordinate attorneys and paraprofessionals at the firm) will be critical and material to ascertaining H&V's knowledge and intent and the knowledge and intent that would thus be imputed to SCA. The following issues uniquely within the personal knowledge of Mr. Vogt and/or his H&V colleagues would be central to the adjudication of critical facts:

* Mr. Vogt's understanding of the terms of the contract at the core of the case;
* Mr. Vogt's communications with the Plaintiff concerning his bankruptcy and the pendency of the automatic stay;
* Mr. Vogt's awareness of the Plaintiff's address and the Plaintiff's availability for service;
* Mr. Vogt's preparation of key court documents in the State Court Case;
* Mr. Vogt's communications (as well as others at H&V) with Moe's;
* Mr. Vogt's post-litigation conduct and the extraordinary delay in informing the Plaintiff about the default in the State Court Case.

The above facts – exemplary but not exhaustive – are uniquely within the knowledge of Mr. Vogt and his H&V colleagues. The Plaintiff is aware that Motions to Disqualify Counsel are generally disfavored and are indeed often perceived as a litigation tactic. To minimize the adverse impact on the Defendant of hiring substitute counsel, the Plaintiff has brought this Motion at the inception of the case. However, in a very real sense, this trial is about the knowledge, intention and conduct of counsel. There is no substitute for counsel's testimony and that testimony will cut to the very heart of the case.

3

### 2. California Courts Authorize Disqualification in Cases Requiring Material Testimony From Counsel

As a threshold matter, this Court is not necessarily bound by California ethical rules, although the local rules for the Northern District require counsel practicing before the Court to be knowledgeable and versed in those Rules. See Civil Local Rule 11-4 (a).

Under California law, a Disqualification may be based on an attorney's dual role as advocate and witness.

> The 'advocate-witness rule,' which prohibits an attorney from acting both as an advocate and a witness in the same proceeding, has long been a tenet of ethics inthe American legal system . . . ." *Kennedy v. Eldridge* (2011) 201 Cal. App. 4th 1197

Moreover, under California law, the rights and interests of an opposing party are properly considered in weighing a Motion to Disqualify:

> [c]ombining the roles of advocate and witness can prejudice the opposing party' and confers on the opposing party 'proper objection where the combination of roles may prejudice that party's rights in the litigation.'... 'A witness is required totestify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.' *People v. Donaldson*, 93 Cal.App. 4th 916, 929 (2001)

The Plaintiff respectfully submits that this rule has particular force when applied to a case in which counsel is opposing a *pro per* litigant. Despite instruction and admonition by the Court, it is likely that counsel will retain a patina of authority with the jury as a professional advocate that the Plaintiff will be hard pressed to match. While this competitive disadvantage may be unavoidable and incurable it surely should not be magnified by a blurring of the advocate/witness role in which counsel would be commenting on the credibility of his own

testimony or the testimony of his employees or partners.

Counsel will not be testifying in connection with a peripheral issue but will, be addressing, as a witness, the core issue of the case: what did he know about the about the fraudulently obtained default in the State Court case? Is this a case of a perjurious process server gone completely rogue or was it coordinated by an accomplished and experienced attorney? Certainly H&V's shyness about *post*-default communications suggest a top-down strategy fashioned by knowledgeable counsel.

The Plaintiff is not engaged in a tactical move but is rather compelled to bring this issue to the Court's attention on pain of waiver. The Plaintiff will be unfairly disadvantaged if the most important witness in his case is also the visible advocate for his adversary.

3.   This Court Should Disqualify H&V Based on its Unavoidable Conflict of Interest

A conjunctive basis for Disqualification in this case is suggested California Rule of Professional Conduct 3-310 (B) (4) prohibiting representation of a client without informed written consent of the client (*not* provided to this Court) where the lawyer has a legal, business, financial or professional interest in the subject matter of the litigation. Plaintiff respectfully submits to this Court that the Court utilize its inherent authority to disqualify counsel in this case because counsel has the opportunity to manipulate evidence to its advantage and its clients disadvantage.

Manifestly, H&V has reputational and financial capital riding on the outcome of this litigation. If it is determined that H&V proceeded fraudulently in procuring the default in the State Court litigation H&V would face possible uninsurable compensatory, trebled, and exemplary damages, damage to its good name, and potential disciplinary consequences. These consequences may be magnified if it is determined that H&V proceeded without knowledge of

5

his client, SCA.

An independent law firm, representing SCA might rationally adopt a strategy of contending that H&V's tortious acts were unauthorized and unratified by SCA. In other words, SCA's defense would be layered: a *primary* denial that any tortious acts took place but a *secondary* denial that any such acts by H&V were authorized or ratified by SCA. It seems highly unlikely that H&V will chart such a course on behalf of SCA.

This Plaintiff is seeking a just result, not an unjust result, even if the just result is to his advantage. If H&V is the primary culprit in this case, H&V should shoulder the primary liability. Moreover, it is possible that a fact finder would impose a more severe sanction against a corrupt law firm than against a commercial entity that was guilty of litigation hardball without a full understanding of the rules it was violating.

In an abundance of candour (and the Plaintiff will always be candid with this Court) California authority is more supportive of his standing to raise the attorney-as-witness objection than the 3-310 objection. That said and conceded, this Court is not completely bound by California law on the subject of the ethical strictures governing advocates appearing before it, and Plaintiff asks that the Court take his observations into consideration in reaching a decision. <u>This Court retains the inherent authority to ensure that the proceedings are untainted by conflicts of interest especially when those conflicts may prompt counsel to manipulate the evidence to his advantage and the disadvantage of his client.</u>

At a minimum it is unseemly for a primarily liable co-defendant to be representing a (potentially) vicariously liable co-defendant. Of course, it is possible that SCA was the puppet-master in this case and that H&V reluctantly obeyed, but the record can be most reliably established if SCA is represented by an untained law firm and H&V retains separate counsel to conduct its own defense.

4. Conclusion

Plaintiff, a pro per litigant, will demonstrably incur prejudice if a credible, accomplished advocate like Mr. Vogt is allowed to urbanely comment on the credibility of his own testimony which is central to the disposition of this case. SCA has access to many good law firms and would sustain little or no prejudice by being obliged to effect a substitution of counsel at this early stage in the proceedings.

Conjuntively, H&V's own financial and professional interests are inextricably intertwined with the outcome of this litigation. This Court may wish to demand a higher standard from advocates appearing before it by insisting that they withdraw in cases where their independent interests unavoidably conflict with the interests of their clients.

The firm of Herrig & Vogt LLP should be disqualified from appearing as counsel for SC Anderson in this case.

RESPECTFULLY SUBMITTED.

Date: 2/16/2018

_____
Carl Alexander Wescott. *Pro Se*